We'll move on to the next case of the day, Kelham v. Berryhill, which is Appeal 18-2064. Mr. Rodman? Your Honors, may it please the Court. My name is Jason Rodman, and I represent the appellant, Tony Kelham. This is an appeal from a denial of Social Security benefits. It was a step four case. For the sake of efficiency today, I'm going to focus on my lead argument, and I'm going to walk you through three different cases. There are three different themes related to that argument, and the argument concerns the consultative examiner, Dr. Onomoushi. First, I'll walk you through how the objective findings in Dr. Onomoushi's opinion, or in Dr. Onomoushi's report, support his opinion. Second, I'll walk you through how the ALJ opinion, the Administrative Law Judge decision, does not follow the consultative examiner, the CE examiner, weighting rules. And then third, I will walk you through how effectively what's happened is that an independent medical finding has been made. All right. So first, as a little background to dive into this objective findings point and theme, the ALJ opinion gives great weight, or says it does, to Onomoushi's objective findings, and then no weight to Onomoushi's opinion that Kelham is limited to light work. Can I ask you, Mr. Robin, how important is this limitation to light versus medium work in this case? Is this a grids issue? As to whether it's a grids issue or not, it might be a close question because it's kind of a unique case, but I will tell you that at the hearing there was never a question asked as to light work in terms of the hypothetical. And so it wouldn't be harmless for that reason, and also there's no evidence that step five would be met with all of the impairments in combination in a situation where you have light work. But you raise an interesting related point, which is that by using specifically light, Onomoushi, who is hired as a consultative examiner by the SSA, is aware of the different terms light, medium, heavy, very heavy, and would have made an evaluation as to that. So very heavy is 100 pounds at a time with frequently, which means up to two-thirds of the day, at 50 pounds or more. And actually very heavy is more than 100 pounds. Heavy, I believe, is 100 pounds at a time with frequently lift carry up to 50 pounds. Medium, up to 50 pounds at a time with frequently, which is up to two-thirds of the day, lifting and carrying 25 pounds. With light being lifting no more than 20 pounds at a time as part of regular work activities with frequent lifting and carrying of 10 pounds. So the ALJ opinion points out that while there are minimal objective findings and Dr. Onomoushi acknowledges it as to the hip and knee impairments. Now, first off, what's problematic about that narrow argument seems to be that, okay, well, the definition of minimum impairments, how does that translate to actual functional impairments in terms of how much Ms. Kellum can lift on an ordinary basis in a work environment? But then moreover than that, just because there may be minimal objective findings as to knees and hips, it doesn't mean that there are not other objective findings that Dr. Onomoushi is examining. He's examining the whole person. What are the other objective findings you're relying upon? The restricted range of motion with respect to the knees is minimal. Right, and Dr. Onomoushi points that out. Same with respect to the lumbar range of motion. Well, I believe Dr. Onomoushi flags specifically the knees and hips as minimal. In terms of the lumbar range of motion, that would have been a situation where he actually examined the claimant and measured with… Right, right, I understand. Right, and so… These are pretty minimal findings. Okay, but they are objective findings. In terms of the other findings, it's a person who is in her 50s, and that's noted. It's a person with a stature of 142 pounds, 5'1", with right hand. Those seem like minor things, but again, it's a doctor examining the patient and forming conclusions about what the patient can do in an ordinary work environment. Another piece that the AOJ talks about, but only talks about separately, is the visual acuity of 20 over 200 in the right eye. So, I mean, bad vision in the right eye could mean someone's prone to drop things, and you don't want someone dropping 50 pounds on anything or anyone. And even if it were seen in a distance, someone missed seeing and course correcting with 50 pounds is substantial. The point is that there seem to be objective bases for the onimus opinion that Calum ought to be restricted to light work. But because Calum, or excuse me, because Onimusi is a consultative examiner, there are special rules that apply. And in general, there's the weighting rules regarding position opinions. It's not clear that the AOJ delves into those formally as to Onimusi. But, and perhaps the most relevant place where these are discussed is in the Barnart, Barnett v. Barnhart 2004 case, that discuss how an AOJ can reject an examining doctor opinion only for reasons supported by substantial evidence. And further, with Garcia, a consultative examiner is an agency doctor and thus unlikely to exaggerate an applicant's disability. So, it presents a situation where the court may effectively put a notice, well, this is unusual, what's the good reason for doing this? And Calum submits a statement that there has not been one. And finally, what this ends up functioning as is an independent medical finding, which can become problematic in terms of a due process situation, because the administrative law judge, and this is in the Moon case, functions as kind of, I believe it's the Moon case, between the Moon and the Rowan case. But the administrative law judge functions as a neutral observer, but then steps in as this competing expert examiner. And if there are no other questions at this time, I'd like to reserve my time for rebuttal. I'd like to ask you, you've argued that the AOJ failed to take sufficient account of what's described as Ms. Calum's lack of insight. Could you explain for us what is meant by lack of insight, and how it affects a person's ability to work? Okay, there are complicated technical reasons that I've chosen to focus on, and I'll answer your questions here real quick. You've briefed it, you've briefed it, that's why I'm asking, Mr. Rodman. You're absolutely right. So I think it has to come to do, from a practical perspective, with the fact that when she had that examination that determined her as borderline intellectual functioning, she was already 50 years old in 2011. And so while there were later examinations of her... So what is lack of insight? What is meant by that? I think lack of awareness as to being able to testify as to exactly how limited she is or is not in her psychological function. And how does that lack of insight affect her ability to work? Well, it would need to be accounted for in the residual functional capacity. That's what I'm asking you. I think the answer is... How would it affect her ability to work? I think the answer comes down to things like persisting and communicating. And to some degree or another, the ALJ opinion does go through at least real stretches of that residual functional, of some of those CPP, those concentration, persistence, and pace limitations, which is why I have chosen today to focus on that lead argument. Thank you. For the government, Ms. Russell. Good morning, Your Honors. May it please the Court. My name is Mary Ellen Russell. I represent the Acting Commissioner of Social Security. In this case, the ALJ did cite substantial evidence to support her decision to find that Ms. Kellum was not disabled. Now, Mr. Rodman indicated that he'd like to focus primarily on the physical examination of Dr. Onomousi, so I'm happy to discuss that first if you'd like. Significantly, Dr. Onomousi, as you pointed out, made two findings, only two objective findings. Those two findings were the reduced range of motion in the knees and in the lumbar spine. Those are minimal findings, to be sure, as you noted. And with regard to the lumbar spine, Ms. Kellum didn't even complain of pain there. Now, the key to the physical examination here is that at no point did anyone ever identify any medically determinable physical impairment, other than the visual acuity problem. You have to have a medically determinable impairment in order to find that symptoms such as pain affect the ability to do work. That was not present here, as I said, other than with regard to her visual acuity. And for that reason, Dr. Onomousi's seemingly random conclusion that Ms. Kellum was limited to light work really doesn't make sense. As we noted, even Dr. Onomousi himself noted that there were minimal objective findings on examination. So it simply doesn't make sense to say that she's limited to light work. This is particularly true with regard to the fact that during the period at issue, Ms. Kellum was in fact doing medium work. She had an assembly job, a temporary one, that ended because the job ran out, not because she couldn't continue to perform it. She was in fact doing medium-level work. That puts Dr. Onomousi's opinion in even less regard. Did the ALJ make that point? That she was working? Yeah. She did, Your Honor. She did note that Ms. Kellum temporarily had a job. She noted it a couple times, first with regard to substantial gainful activity. It did not rise to that level, but it certainly did indicate that her abilities were greater than she said they were. With regard to the visual acuity, Ms. Kellum testified that she could in fact see well enough to drive, even with her visual problems, and that she could spot a box on the floor and read a newspaper. And that was before she was able to get her eyeglass prescription renewed. So the ALJ has sufficiently accommodated the fact that she has somewhat reduced visual acuity. Is that in one eye? Yes, the right eye only. Okay, so the left eye is okay? Yes. As to your question, Your Honor, about would the lack of insight affect the ability to work, no. It apparently didn't because, as we noted before, Ms. Kellum was in fact working during part of the period at issue. So the ALJ did cite substantial evidence, both with regard to the physical impairments and the mental impairments. The ALJ considered that the drug Invega, which Ms. Kellum had been taking for quite a while, did stabilize her mental impairments. It was working well without any side effects, and her doctors were even able to reduce that dosage during the period at issue to good effect. There are psychotherapy notes that the ALJ cited, too. And after the initial evaluation, her condition did stabilize. She had minimal complaints, euthymic mood, good energy, and notably she had an ability to stay on task. Now Mr. Rodman has focused on the borderline intellectual functioning, but the ALJ took that into account. She found it a severe impairment, and she acknowledged that there was some reduction as a result of that, which limited Ms. Kellum to simple, unskilled work. So those limitations have been incorporated into the RFC. Really, the ALJ incorporated all of the limitations that were contained in these two reports into the RFC. With regard to the physical, the ALJ limited Ms. Kellum to medium work, even in the absence of any medically determinable physical impairment. And that was in deference to her statement that she was unable to afford a primary care doctor during the relevant period. So he gave her the benefit of the doubt, I'm sorry, she gave her the benefit of the doubt with regard to the physical. And with regard to the mental, based on Dr. Miller's findings that Ms. Kellum would have low frustration tolerance that would affect her social interactions, the ALJ then also incorporated a limitation to only occasional contact with the general public. So there really is no error here with regard to anything that the ALJ did on these two medical reports. The ALJ took all of the minimal findings and observed what limitations those doctors found, weighed those limitations in light of the rest of the evidence of record, and formulated an appropriate RFC that really weighed in the benefit of Ms. Kellum. So if there are no further questions, Your Honors, I would just request that you affirm the Commissioner's decision, because it is in fact supported by substantial evidence, contained within the decision and explained well, and is free from legal error. Thank you, Ms. Russell. Any rebuttal, Mr. Rodman? Briefly, if I may. Okay. First is to the SGA issue. That goes to the statutory language, and so the part-time work she was doing did not reach SGA. And so going to the Richardson Perales Supreme Court case, and not just the substantial evidence test, but also the interpreting the act liberally in favor of the claimant applies. But then to delve into the, and that applies to the medically determinable impairments, I think as well, but to delve into the Commissioner's response in her brief as to the regulation interpreting, I think, that medically determinable phrase in the statute, it says, and I'm quoting from the brief, the impairment must be established by objective medical evidence, not by the claimant's statement of symptoms, not by a diagnosis, not by a doctor opinion. Here, it was objective evidence because it was by examination. Are you talking about the restricted range of motion? Yes, Your Honor. Okay. Thank you. Thank you. Thank you, Mr. Rodman. The case is taken under advisement. Thanks also to the government.